## LUDWIG BENDIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19159.    Promulgated April 24, 1950.

*Norton I. Katz, Esq.*, and *Zivel B. Niden, C. P. A.*, for the petitioner.
*Stephen P. Cadden, Esq.*, for the respondent.

682

684

## OPINION.

HILL, *Judge*: The respondent contends that the amount in question is not deductible as interest within the meaning of section 23 (b) "because petitioner made no valid gift of securities to his said children during 1935 and 1936" and because "petitioner has not proved that he paid the children $5,840.50 as interest during 1943." The petitioner, on the other hand, claims that that amount is deductible because it represented a payment of interest in the year 1943.

The payment of interest is supported by petitioner in his brief as follows:

It has been demonstrated, supra, that the petitioner made a valid gift of the securities to the children in 1935 and 1936. Similarly, it has been shown that the children thereafter remained the owners of the securities and that, by continuing to trade the securities for the children's account, as a stockbroker, petitioner was under an obligation to deliver the securities, or their equivalent, to the children, on demand.

Interest which is deductible means an amount paid on an unconditional and enforceable obligation.

*I. T. 3545 (1942).*

Since, under state law, the petitioner was under an unconditional duty to deliver the securities to his children, this requirement is met.

We do not agree with petitioner's contention that he made a valid gift of the securities involved to the children in 1935 and 1936. We set forth the factors prerequisite to the establishment of a gift in *Adolph Weil*, 31 B. T. A. 899; affd., 82 Fed. (2d) 561; certiorari denied, 299 U. S. 552, as follows:

* * * (1) a donor competent to make the gift; (2) a donee capable of taking the gift; (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, *in praesenti;* (4) the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; (5) a delivery by the donor to the donee of the subject of the gift or of the most effectual means of commanding the dominion of it; (6) acceptance of the gift by the donee; * * *

See also *H. S. Richardson*, 42 B. T. A. 830.

We do not believe that under the facts and applicable law petitioner has proved that he had either a clear and unmistakable intention to absolutely and irrevocably divest himself of the title, dominion, or control of the subject of the gift, or that he made an effective delivery of the subject of the gift. Section 162 of the Uniform Stock Transfer Law (Book 40, Personal Property, McKinney's Consolidated Laws of New York, Ann., p. 856) provides:

§ 162. How title to certificates and shares may be transferred.

Title to a certificate and to the shares represented thereby can be transferred only,

(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or

(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign or transfer the same or the shares represented thereby, signed by the person appearing by the certificates to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.

(c) By delivery of a separate instrument containing a written assignment of the certificate, or an interest therein, executed by the officer who levies an execution against property upon such certificate, or such interest therein, and sells the same, to the purchaser on the execution sale, and such assignment shall, together with delivery of the certificate, effect a transfer of the title to the certificate, or the interest therein levied upon and sold as specified in such assignment, and the shares represented by such certificate, or such interest therein, to the purchaser at the execution sale.

Petitioner's only action to effectuate transfer of title to the shares of stock in question, so far as the record shows, was to issue instructions that accounts be opened in the names of the children in his private books. We do not believe in view of the above statute that this was a sufficient act to constitute a delivery by the donor to the donee of the subject of the gift. *Adolph Weil, supra.*

A New York court stated in *Agar* v. *Orda,* 258 N. Y. S. 274; affd., 264 N. Y. 248; 190 N. E. 479, as follows:

Plaintiff contends that title to 200 shares of stock passed to the defendant at the moment the seller received stock sufficient to meet its obligation to the defendant. No weight can be given to this contention, in view of the provision of the Uniform Stock Transfer Act that title to shares of stock can be transferred only by delivery. Personal Property Law, § 162, as added by Laws 1913, C. 600 * * *.

It was held by the Federal District Court for the Southern District of New York in *In re Broomhall, Killough & Co.,* 47 Fed. (2d) 948, that mere placing of stock in new names of purchasers *without* transfer of physical possession of certificates was not a transfer within New York law. (Sec. 162, *supra.*) See *Sizer* v. *United States,* 65 Ct. Cls. 450; *R. C. Coffey,* 1 T. C. 579; affd., 141 Fed. (2d) 204.

In addition to the failure to transfer any certificates to the children, which is clearly required by New York law, to transfer title to shares of stock, no income tax returns were ever filed by the children from 1935 to 1942, although the record shows that certain of the securities in question were sold and that some of them earned dividends. In fact, for the taxable year 1937 petitioner and his wife reported the income from those securities in their tax return filed for that year. In addition, in the "Statement of Financial Condition and Other Information" sworn to by petitioner on March 30, 1942, he stated that he had not disposed of any assets or property by sale, transfer, exchange, gift, or any other manner except by sale for full value from one year prior to the taxable period 1935 and 1936 to that date. In view of the above, we do not believe that petitioner has sustained his burden of proving that gifts were made to his children in 1935 and 1936, as contended.

Petitioner states that he "did all that was within his power to effect delivery to the children," citing *Lillian K. Blake,* 23 B. T. A. 554; *Harry C. Moores,* 3 B. T. A. 301; and *Emil Frank,* 27 B. T. A. 1158. In

all those cases the evidence clearly established a gift. In *Lillian K. Blake, supra,* the taxpayer placed in her safe deposit box an envelope which contained certificates for shares of stock and on the outside of the envelope she wrote a notation to the effect that 300 shares of stock belonged to her son. In addition, she later executed "an irrevocable stock power of attorney assigning 300 shares of stock" to her son. She returned all the income from those shares of stock as income of her son and, finally, a certificate for 300 shares of stock was issued in the names of the taxpayer and a trust company as trustees for the taxpayer's son. In *Harry C. Moores, supra,* the taxpayer directed the secretary of a company to cancel 160 shares of his common stock and issue certificates of 100 shares to his wife and 30 shares to each of his two children. Subsequently the certificates were duly issued and delivered to the three donees. We stated, at page 304, as follows:

> The certificates denoting the transfers were duly executed and handed to the assignees and the shares of stock which were so assigned thereafter became their [the donees'] property.

In *Emil Frank, supra,* certificates of stock were issued in the names of the daughters and in subsequent transactions involving those shares of stock powers of attorney were executed by the daughters and given to the taxpayer from time to time. Those facts clearly are not present in the case at bar. The other cases which petitioner mentions on brief are also distinguishable.

It follows that respondent did not err in his determination.

*Decision will be entered for respondent.*